RANDOLPH B. FORREST *vs.* HORACE C. HENRY.

June 9, 1885.

**Redemption from Tax Sale — Auditor's Statement — Mistake as to Amount.**—One attempting to redeem lands which, at a tax sale, had been bid in for the state, may in good faith rely upon the official statement made to him by the county auditor as to the amount necessary to be paid to effect redemption; and a redemption made by the payment of such amount is effectual, although, by reason of the mistake of the auditor, the amount stated and paid is less than that which the law required.

**Same—Discharge of Tax Lien.**—A payment under such circumstances, which did not include the taxes for a year (1875) which had become a charge upon the land subsequent to the time of the tax sale, was fully effectual as a redemption, and discharged all claim of the state against the land even for the taxes for that year.

**Same—Subsequent Judgment and Sale for Omitted Tax held Void.**—The tax, being so discharged, was paid within the contemplation of Laws 1881, *c.* 135, so that a judgment and sale of the land, under that act, for the tax of the year 1875, was void.

. Action to determine adverse claims to real estate. Appeal by plaintiff from an order of the district court for Hennepin county, *Lochren,* J., presiding, refusing a new trial.

*McHugh & McHugh,* for appellant.

*Woods & Hahn,* for respondent.

. DICKINSON, J. This action involves the title of a lot of land in Minneapolis. The plaintiff's alleged title is derived through a sale of the land in 1881, under chapter 135 of the laws of that year, for delinquent taxes for the year 1875. The defendant has title by conveyance from one Smith, the original owner of the land, unless Smith's

title was divested by the sale in 1881. At the general tax sale in 1875 for delinquent taxes for 1874, the land was exposed for sale, and, there being no bidders, it was bid in for the state. In June, 1877, Smith, seeking to redeem from that tax sale, applied to the county auditor for a statement of the amount necessary to be paid to redeem. The auditor delivered to Smith a statement, signed by him officially, to the effect that upon payment of the taxes for the years 1874 and 1876, with the costs, penalties, and interest, the amount of all these items being stated, redemption would be made from all delinquent taxes and tax liens for those years. On the same day Smith paid the sum so indicated to the county treasurer for the purpose of making redemption, and received the treasurer's receipt. In fact there were then delinquent the taxes for the year 1875, which the county auditor by mistake failed to include in his statement. The omission was not observed by or known to Smith, who supposed that his payment covered all taxes and tax liens upon the property.

The precise question to be decided is as to the effect of this attempted redemption in respect to the taxes for 1875, and in respect to the judgment and sale therefor under the act of 1881, through which the asserted title of the plaintiff was derived. The right to make redemption was declared by the statutes then in force, and the law should be so construed as to make the right to redeem available. In order that an effectual redemption be made, it should only be necessary that one seeking to redeem should pursue the course which the law contemplates. The statute provided that redemption might be made by paying money into the county treasury, the amount of which would depend upon the circumstances of the case. Where the land had been bid in for the state, and no assignment had been made, the sum to be paid was the amount for which the land had been bid in, with interest, and all subsequent taxes, penalties, and interest. If the right of the state had been assigned, the sum to be paid was the amount paid by the assignee, with interest from the time of payment by him, etc. But it was practically impossible for one seeking to redeem to make such payments until he should be informed by the county auditor as to the amount required to be paid. The facts from which this amount could be calculated should all appear in the au-

ditor's books, and could not all be learned from any other source. For instance, in a case like that under consideration, the land-owner could only certainly ascertain from the auditor, or from his books, whether the auditor had assigned the right of the state subsequent to the time of the tax sale; and yet precise knowledge as to such fact would be necessary to determine the amount required to be paid to redeem; for that should include the sum paid by the assignee, and interest thereon from the time of payment.    But aside from this obvious necessity that the redemptioner should ascertain from the auditor the amount necessary to be paid to redeem, it is to be considered that the auditor was required by the statute to certify to the fact of redemption, which involved the determination by him as to the amount necessary to be paid.    And in the same section it is provided that "if the amount so paid for the purpose of redemption be less than that required by law, it shall not invalidate such redemption, but the auditor shall be liable for the deficiency to the person entitled thereto." Laws 1874, c. 1, § 130; Laws 1875, c. 5, § 33.    The word "person" may be construed to include and designate the state.    Gen. St. 1878, c. 4, § 1, sub. 11.    It seems apparent that the statute imposes upon the auditor the duty and the responsibility of determining the amount necessary to be paid to make redemption; that an attempted redemption is not to be ineffectual by reason of an error on his part resulting in the payment of a less sum than that due; but that for the deficiency the auditor shall be responsible to the person (or to the state) entitled to receive the amount required to redeem.    We think, therefore, that Smith might rely, and in good faith act, upon the certificate of the auditor stating the amount necessary to be paid to redeem, and that the payment of such sum was effectual as a statutory redemption.    *Price* v. *Mott*, 52 Pa. St. 315; *Dietrick* v. *Mason*, 57 Pa. St. 40; *Breisch* v. *Coxe*, 81 Pa. St. 336; *Corning Town Co.* v. *Davis*, 44 Iowa, 622, 628; *Van Benthuysen* v. *Sawyer*, 36 N. Y. 150.

But it is said that this redemption was effectual only as to the taxes for 1874 and 1876, which only were referred to in the certificate, and that the tax for 1875 remained still unpaid, and a charge upon the land in favor of the state, when the proceedings were instituted under the act of 1881.    We think, however, that the legal effect of the

redemption was to discharge the claim of the state upon the land for the tax of 1875 as well as that for 1874 and 1876. Under the statute, the claim of the state was an entire one, including inseparably the amount for which the land had been bid in, with all subsequent taxes. The law required the whole amount to be paid, and no act or omission of the auditor could make partial or incomplete a redemption which, by the law, was effectual and valid as such. The case is not different in this respect from what it would have been if there had been no taxes charged upon the land subsequent to the tax sale in 1875, but the auditor had allowed redemption by payment of a less sum than that for which the land had been bid in at that sale for the taxes of 1874. Such a redemption would be effectual under the statute above recited,—and, perhaps, without that statute,—and would completely discharge the claim of the state upon the land. The redemption would not be effectual merely *pro tanto*, allowing proceedings to be afterwards had against the land to enforce payment of the deficiency. So the redemption in this case had the same effect, as respects the land, that it would have had if the full amount which the state was entitled to receive had been paid.

We thus come to the conclusion that the proceedings against the land under the law of 1881 to enforce payment of the tax for 1875 were not authorized; for it was only as to lands charged with taxes which had become delinquent, and which had not been "*satisfied* by *payment, redemption, or sale*," that such proceedings were to be instituted. See section 1 of the act. And it is further declared, by section 7, in respect to the judgment and sale contemplated by that act, that "said judgment and sale shall be void, upon proof at any time that such taxes shall have been paid or [that] such property was exempt." The amount of the tax for 1875 was not, in fact, paid into the county treasury. It was, however, by the redemption, to which full legal effect is to be given, satisfied and discharged from the land, so that the state could assert no further claim upon the land on account of that tax. While proof of *payment* or of exemption is alone specified in section 7 as having the effect to avoid the judgment and sale, we think that the word "paid" is here used in a comprehensive sense, embracing the meaning of the words "satisfied by payment, redemption, or sale,"

which, in section 1, define the conditions authorizing proceedings under this act. This is within the proper signification of the word itself, among the primary definitions of which are *to satisfy; to discharge one's obligation to*. Webst. Dict. It appearing that in this sense the tax had been paid, the judgment and sale under which the plaintiff claimed title were void.

Our opinion is substantially in harmony with that of the learned judge whose determination we have reviewed, and his order refusing a new trial is affirmed.